UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

| | |
|---|---|
| KEVIN POUND, on Behalf of Himself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>STEREOTAXIS, INC., MICHAEL P. KAMINSKI, and DANIEL J. JOHNSTON,<br><br>     Defendants. | Case No. 4:11-cv-01752-HEA<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT LOCAL 522 PENSION FUND AS LEAD PLAINTIFF AND TO APPROVE SELECTION OF COUNSEL** |

COMES NOW Movant Local 522 Pension Fund (the "Pension Fund"), and hereby submits this Memorandum of Law in support of its motion for: (1) appointment of the Pension Fund as lead plaintiff; and (2) approval of lead plaintiff's selection of Robbins Umeda LLP ("Robbins Umeda") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as co-lead counsel and Carey, Danis & Lowe as liaison counsel.

## I. INTRODUCTION

This action was brought on behalf of those who acquired the publicly traded securities of Stereotaxis, Inc. ("Stereotaxis" or the "Company") between February 28, 2011 and August 9, 2011 (the "Class Period").  This action was brought pursuant to sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. sections 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. section 240.10b-5.

The Pension Fund should be appointed as lead plaintiff because it: (1) timely filed for appointment as lead plaintiff; (2) has the largest financial interest in this litigation of any proposed lead plaintiff of which it is aware; and (3) will fairly and adequately represent the interests of the Class.  S*ee* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Fund's selection of Robbins

Umeda and Robbins Geller to serve as co-lead counsel should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Both firms possess experience in the prosecution of securities class actions and will adequately represent the interests of all Class members as lead counsel.

## II.     SUMMARY OF PENDING ACTIONS

Stereotaxis designs, manufactures, and markets a cardiology instrument control system, called Niobe®, for use in a hospital's interventional surgical suite to enhance the treatment of coronary artery disease and arrhythmias. The Company also markets the Odyssey system as a data management solution for remote viewing and recording of live interventional procedures.

The complaint alleges that beginning on February 28, 2011, Chief Executive Officer Michael P. Kaminski, along with certain officers and directors at Stereotaxis, issued a series of positive statements to investors about the business condition and future prospects of the Company that were materially false and misleading, and that caused shares of the Company's stock to trade at artificially high prices. In particular, the complaint alleges that officials at the Company failed to disclose to investors material adverse facts that: (1) Stereotaxis was unable to leverage its extensive portfolio and scale of products and services in a strategically beneficial manner; (2) market feedback from users of the Company's technology was "mixed"; (3) the Niobe system was far from the "standard of care" and needed "fundamental product improvements"; (4) demand for the Niobe and Odyssey systems was weak, and that the number of units being sold was decreasing; (5) the reported backlog of orders did not fairly represent future revenue the Company expected to recognize; and (6) that the Company overstated its market edge.

On August 8, 2011, the Company announced financial results for the second quarter of 2011 that revealed that the Company was performing well below expectations. Additionally, the press release disclosed to investors that the Company was forced to suspend its full year guidance for 2011, and that Daniel J. Johnston was resigning as the Chief Financial Officer. On this news, shares

of Stereotaxis declined by more than 58% of their value, closing on August 9, 2011 at just $1.19 per share.

## III.  PROCEDURAL BACKGROUND

Section 21D(a)(3)(A) of the Exchange Act requires early notice to advise class members of their right to move the court to be appointed lead plaintiff and provides that any member or members of the class may so request this within sixty days of publication of the early notice. 15 U.S.C. §78u-4(a)(3)(A)(i); *Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002). On October 10, 2011, pursuant to section 21D(a)(3)(A)(i) of the Exchange Act, a notice of pendency of the action was published, advising Class members of the existence of the lawsuit and describing the claims asserted therein. *See* Declaration of James J. Rosemergy in Support of Motion to Appoint Local 522 Pension Fund as Lead Plaintiff and to Approve Selection of Counsel ("Rosemergy Decl."), Ex. 3.

## IV.  ARGUMENT

### A.  The Pension Fund Should Be Appointed Lead Plaintiff

#### 1.  The Pension Fund Has the Largest Financial Interest in the Relief Sought

The Exchange Act requires class members seeking appointment as lead plaintiff in securities class actions to file a complaint *or* file a motion to be appointed as lead plaintiff within sixty days of publication of the published notice of the action. 15 U.S.C. §78u-4(a)(3)(A)(i). The notice of this action was published on *Business Wire* on October 10, 2011, and accordingly, the Pension Fund's motion is timely filed within sixty days from the publication of that notice, or December 9, 2011. *See* Rosemergy Decl., Ex. 3.

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. section 78u-4, also provides that this Court "shall appoint as lead plaintiff the member or members of the purported

- 3 -

plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The statute also provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice ...;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

During the Class Period, the Pension Fund purchased 11,300 shares of Stereotaxis securities at a cost of over $42,000 as a result of defendants' materially false and misleading statements and lost over $29,000 in connection therewith. *See* Rosemergy Decl., Exs. 1-2. To the Pension Fund's knowledge, no other plaintiff or movant has suffered a greater financial interest. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *see also Tellabs*, 214 F.R.D. at 228.

### 2. The Pension Fund Is Qualified Under Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I) of the Exchange Act provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure [("Rule 23")]." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In selecting a lead plaintiff, only the typicality and adequacy of representation factors of Rule 23(a) are considered. *Tellabs*, 214 F.R.D. at 228; *See also Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc. ("MFRA")*, No. 4:08-CV-1411(CEJ), 2008 WL 5233106, at *1 (E.D. Mo. Dec. 12, 2008).

With respect to the qualifications of the class representatives, Rule 23(a) requires that their claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. *Tellabs*, 214 F.R.D. at 228. As detailed below, the Pension Fund satisfies the typicality and adequacy requirements of Rule 23(a).

### a. The Pension Fund's Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a)(3) is satisfied so long as there is a nexus between the class representative's claims or defenses and the common questions of facts or law which unite the class. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); *see also Mas v. KV Pharm. Co.*, 4:08-CV-1859 (CEJ), 2009 WL 1011506 at *1, *3 (E.D. Mo. Apr. 15, 2009), as amended (Apr. 28, 2009) (determining typicality requirement is satisfied "when each class member makes similar legal arguments to prove the defendant's liability") (citation omitted). When the named plaintiffs have suffered the same or similar injuries as the class members as a result of the same course of conduct by defendants, and their claims are based on the same legal issues, the typicality requirement has been met. *De La Fuente*, 713 F.2d at 232 ("'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'") (citations omitted).

The legal issues common to the members of the Class in this case, which predominate over questions that may affect individual Class members, include the following:

1. Whether the defendants' acts as alleged herein violated the federal securities laws;

2. Whether defendants' statements during the Class Period misrepresented material facts;

3. Whether the market price of Stereotaxis securities was artificially inflated following the material misrepresentations and the failure to correct the material misrepresentations; and

> 4.      To what extent the members of the Class have sustained damages and the proper measure of damages.

As a result, there is a well-defined community of interest in the questions of law and fact involved in this case and the claims asserted by the Pension Fund are typical of the claims of the members of the proposed Class. The Pension Fund, as did all members of the proposed Class, acquired Stereotaxis securities at prices artificially inflated by defendants' misstatements and omissions and was damaged thereby. *See Mas*, 2009 WL 1011506, at *3 (holding typicality requirement was satisfied because the proposed lead plaintiff, like other class members, "purchased [the defendant-company's] securities during the class periods at inflated prices and suffered damages as a result"). Further, typicality exists here because the Pension Fund's claims arise from the same alleged course of conduct and are based on the same theories as those of the absent Class members.

### b.   The Pension Fund Will Fairly and Adequately Represent the Interests of the Class

"[T]he adequacy requirement is satisfied where: (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no antagonism between the interests of the proposed lead plaintiff and the other members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy." *Mas*, 2009 WL 1011506 at *3; *see also MFRA*, 2008 WL 5233106 at *2 (citations omitted). The Pension Fund also satisfies the adequacy requirement. Here, the Pension Fund is an adequate lead plaintiff because its interest in aggressively pursuing the claims against defendants is aligned with the interests of the members of the Class who were similarly harmed as a result of defendants' false and misleading statements. There is no antagonism between the Pension Fund's interests and those of the other members of the Class and there is nothing to indicate that the Pension Fund will do anything but vigorously pursue the claims on behalf of the Class. It has further demonstrated its adequacy as

Class representative by signing the sworn certification affirming its willingness to serve as, and to assume the responsibilities of, Class representative.  *See* Rosemergy Decl., Ex. 1. The Pension Fund also has selected counsel highly experienced to conduct this complex litigation in an efficient, effective, and professional manner. *See* Rosemergy Decl., Exs. 4-5.

Notably, the Pension Fund is an institutional investor, and as such, is precisely the type of lead plaintiff Congress envisioned would lead securities class actions like this one when it enacted the PSLRA in 1995.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995)[1]; s*ee also Bassin v. deCODE Genetics, Inc.*, 230 F.R.D. 313, 315-16  (S.D.N.Y. 2005) (noting that PSLRA's purpose was to attract institutional investors).  The Pension Fund has the expertise and the incentive to represent the plaintiff Class aggressively and intelligently, in the manner contemplated by Congress when it passed the PSLRA.

Because the Pension Fund has the greatest incentive to represent the plaintiff Class aggressively and intelligently, this Court should presume that it is the most adequate plaintiff in this case.

### B.   The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to court approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  The court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the [plaintiff] class."   15 U.S.C.

---

[1] The House Conference Report concerning the enactment of the PSLRA provides in pertinent parts:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs.… The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.

§78u-4(a)(3)(B)(iii)(II)(aa). Here, the Pension Fund, as the presumptively most adequate plaintiff, has selected Robbins Umeda and Robbins Geller to serve as co-lead counsel and Carey, Danis & Lowe to serve as liaison counsel subject to this Court's approval. *See* Rosemergy Decl., Exs. 4-5.

Robbins Umeda is a nationally-recognized shareholder rights firm focusing its practice on complex shareholder litigation. *See* Rosemergy Decl., Exhibit 5. For example, Robbins Umeda attorneys have secured impressive recoveries in shareholder rights' actions, including a $70 million settlement in *In re Cardinal Health Derivative Litigation*, No. 02-CVG-11-0639 (Ohio Ct. C.P.-Del. Cnty. Dec. 17, 2007) – one of the largest monetary recoveries ever in a shareholder derivative action – and a $61.5 million settlement in *In Titan, Inc. Sec. Litig.*, No. 04-CV-0676-LAB (NLS) (S.D. Cal. Dec. 20, 2005), a securities fraud class action in which Robbins Umeda served as co-lead counsel.

Robbins Geller is a 180-lawyer law firm that is actively engaged in complex litigation, emphasizing securities, consumer, and antitrust class actions. *See* Rosemergy Decl., Ex. 4. Robbins Geller possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. The firm's lawyers have been appointed as lead or co-lead counsel in landmark class actions, including *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998), where plaintiffs' recovery was the largest ever in an antitrust case, and in *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002). *See* Rosemergy Decl., Ex. 4. Robbins Geller attorneys were also responsible for the $925 million recovery in *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691 (D. Minn.) (Rosenbaum, J). Indeed, in approving the lead plaintiff's choice of Robbins Geller's lawyers as lead counsel in *Enron*, the Honorable Melinda Harmon found that its submissions stood "out in the breadth and depth of its research and insight." *Enron*, 206 F.R.D. at 458. Robbins Geller's securities

department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues.

Carey, Danis & Lowe has served as liaison counsel in previous securities and complex shareholder actions, and is capable of doing so here. *See* Rosemergy Decl., Exhibit E.  As such, the Court should approve the Pension Fund's selection of Robbins Umeda and Robbins Geller as co-lead counsel and Carey, Danis & Lowe as liaison counsel for the Class.

Thus, the Court may be assured that, in the event this Motion is granted, the members of the Class will receive the highest caliber of legal representation available.

## V. CONCLUSION

For all the foregoing reasons, the Pension Fund respectfully requests that the Court: (1) appoint it as lead plaintiff pursuant to 15 U.S.C. section 78u-4(a)(3)(B); and (2) approve its choice of Robbins Umeda and Robbins Geller as co-lead counsel and Carey, Danis & Lowe as liaison counsel for the class.

Dated: December 9, 2011

Respectfully submitted,

CAREY, DANIS & LOWE
JAMES J. ROSEMERGY

  s/James J. Rosemergy
JAMES J. ROSEMERGY (#50166MO)

8235 Forsyth Boulevard, Suite 1100
St. Louis, Missouri  63105
Telephone: (314) 725-7700
Facsimile: (314) 721-0905
E-mail: jrosemergy@careydanis.com

*[Proposed] Liaison Counsel for Proposed Lead Plaintiff*

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
GREGORY E. DEL GAIZO
CONRAD B. STEPHENS
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990

Facsimile:  (619) 525-3991
E-mail: brobbins@robbinsumeda.com
gdelgaizo@robbinsumeda.com
cstephens@robbinsumeda.com

ROBBINS GELLER RUDMAN & DOWD LLP
TRICIA L. MCCORMICK
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: triciam@rgrdlaw.com

*[Proposed] Co-Lead Counsel for Proposed
Lead Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Court's electronic mail notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed December 9, 2011.

s/James J. Rosemergy<br>JAMES J. ROSEMERGY

681325